UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY MARGARET BYBERG,

        Plaintiff,        Civil Action No.: 15-13274
                              Honorable Paul D. Borman
        v.                  Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT [R. 12; R. 15]**

      Plaintiff Sherry Margaret Byberg appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 3]. The Court finds that the administrative law judge's ("ALJ") decision is supported by substantial evidence, and thus **RECOMMENDS**:

- **GRANTING** the Commissioner's motion for summary judgment **[R. 15]**;

- **DENYING** Byberg's motion **[R. 12]**; and

- **AFFIRMING** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Byberg's Background and Disability Application

Byberg was 39 years old when she filed her application for DIB benefits on February 26, 2010. [R. 7-5, Tr. 104-05]. She had past relevant work as an insurance sales agent and a cleaner. [R. 7-8, Tr. 427]. Byberg was found to have the severe impairments of fibromyalgia, chronic back syndrome, depression, anxiety, and panic disorder, [*Id.*, Tr. 420], with an alleged onset date of June 4, 2009. [R. 7-5, Tr. 104]. After a hearing, the ALJ determined that Byberg was not disabled. [R. 7-8, Tr. 428]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 407-09]. Byberg timely filed for judicial review. [R. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Byberg was not disabled. At the first step, he found that Byberg had not engaged in substantial gainful activity from her alleged onset date to her last date of insurance coverage, December 31, 2014. [R. 7-8, Tr. 420]. At the second step, he found that Byberg had the severe impairments of fibromyalgia, chronic back syndrome, depression, anxiety, and panic disorder. [*Id.*]. Next, the ALJ concluded that none of Byberg's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 421-23].

Between the third and fourth steps, the ALJ found that Byberg had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a)[2] with the following additional limitations:

> [O]ccasional climbing, balancing, stooping, kneeling, crouching, and crawling; simple[,] routine, and repetitive tasks that require little judgment and can be learned in a short period; no interaction with the public; and occasional interaction with co-workers.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

4

[R. 7-8, Tr. 423]. At step four, the ALJ found that Byberg could not perform past relevant work. [*Id.*, Tr. 427]. With the assistance of VE testimony, the ALJ determined at step five that based on Byberg's age, education, work experience, and RFC, she could perform the representative occupations of bench hand and assembler, for which significant jobs existed in the economy. [*Id.*, Tr. 428].

## II. ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Byberg argues that the RFC is unsupported by a medical opinion, that the ALJ failed to include the required "function-by-function"

6

assessment, that her mental RFC was not assessed properly under Social Security regulations, and that Social Security policies were not followed in evaluating the severity of her fibromyalgia. The Court finds that these arguments are without merit, and that the ALJ's decision was supported by substantial evidence.

### B.

Byberg's claim for disability was initially remanded by the District Court because "a medical opinion [was] required to determine whether Plaintiff's impairments met or medically equaled a listed impairment." *Byberg v. Comm'r of Soc. Sec.*, No. 12-10158, 2013 WL 1278500, at *1 (E.D. Mich. Mar. 27, 2013). Byberg claims that the ALJ "failed to comply" with the Court's order and "came up with his own RFC," [R. 12, PgID 831], conflating the RFC with the opinion on medical equivalency. The ALJ properly obtained a medical opinion on the issue of equivalency from Dr. Alan Kravitz, who testified at the September 2014 hearing that Byberg's impairments neither met nor equaled in severity and duration a listed impairment. [R. 7-8, Tr. 452]. The RFC, on the other hand, is an administrative determination solely within the province of the ALJ, who is required to formulate it "based on all of the relevant medical and other evidence" of record. 20 C.F.R. §§ 404.1545(a); 404.1546(c); *Coldiron v.*

*Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010) (the ALJ determines an RFC by considering "numerous factors" including "medical evidence, non-medical evidence, and the claimant's credibility").

It is true that "an ALJ should resist the temptation to substitute the ALJ's own interpretation of medical records for that of a physician who has examined the records." *Brown v. Comm'r of Soc. Sec.,* 602 F. App'x 328, 331 (6th Cir. 2015). In addition, "courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013) adopted by 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases). But Byberg does not allege that the ALJ improperly substituted his judgment for that of a physician or interpreted raw medical data. Under these circumstances, precedent does not "even remotely suggests that an ALJ must, as a matter of law, seek out a physician's medical opinion...." *Brown,* 602 F. App'x at 331. Thus, Byberg's complaint that "there is no physical RFC from a physician in the record," [R. 12, PgID 831], lacks merit.

**C.**

Next, Byberg asserts that the ALJ violated Social Security Ruling 96-8p by failing to conduct a function-by-function assessment in crafting the RFC, citing *Hogan v. Astrue*, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007). The Commissioner points out that *Hogan* is not a Sixth Circuit case and is contrary to Sixth Circuit case law. In this circuit, the ALJ need not provide a function-by-function analysis, nor must he "discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.,* 30 F. App'x 542, 547 (6th Cir. 2002).

Byberg also contends that the ALJ violated SSR 96-8p, which requires "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." [R. 12, PgID 833]. But the ALJ's did provide such a narrative discussion. He discussed the objective medical evidence that revealed a history of neck and back pain, though MRIs of the cervical, thoracic, and lumbar spines were all normal. [R. 7-8, Tr. 424, discussing R. 7-7, Tr. 219-24]. He summarized the findings of Eric A. Kovan, D.O., whose examination in January 2010 indicated full strength in Byberg's upper and lower extremities, brisk reflexes, positive Spurling's signs bilaterally, and areas of myofascial pain. [*Id.*, Tr. 424, discussing R. 7-7, Tr. 285-86].

The ALJ addressed Dr. Kovan's opinion from February 2010 that Byberg could not work, though her MRIs were normal and her condition was stable. [*Id.*, Tr. 424, discussing R. 7-7, Tr. 290-91]. And he noted Byberg's April 2011 visit to Dr. Kovan, when she complained of an increase in back and leg pain and was found to have multiple trigger points consistent with a fibromyalgia diagnosis. [*Id.*, Tr. 424, discussing R. 7-7, Tr. 368]. The ALJ discussed the May 2013 visit during which Byberg admitted to "engaging in heavy lifting for several days"; the ALJ found it to be "unclear why the claimant would engage in such activity if her symptoms were as painful and debilitating as alleged." [*Id.*, Tr. 424, discussing R. 7-13, Tr. 678-80].

Additionally, the ALJ's narrative summarized the evidence of Byberg's mental impairments, starting with her June 2010 consultative examination with Basivi Baddigam, M.D., when Byberg complained of depression, fatigue, poor focus and frustration. [*Id.*, Tr. 424-25, discussing R. 7-7, Tr. 304-06]. She was found to have an appropriate affect and a calm mood, and was diagnosed with major depression in partial remission. [*Id.*, Tr. 425]. Dr. Baddigam assessed Byberg with a Global Assessment of

Functioning ("GAF")³ score of 50, which the ALJ afforded great weight, finding it to be consistent with her treating physician's diagnoses and the subsequent GAF scores in the record. [*Id.*]. The ALJ additionally summarized the record as it pertains to Byberg's mental impairments, noting her various medications, GAF scores, and diagnoses throughout 2010 and 2011. [*Id.*]. He noted that Byberg failed to attend April, May, and June 2011 appointments at Henry Ford Behavioral Health. [*Id.*, Tr. 425-26, discussing R. 7-7, Tr. 729-31]. And he discussed Byberg's visit to Apex Behavioral Health in September 2014, and her subsequent failure to attend her next appointment there that month. [*Id.*, Tr. 426, discussing R. 7-13, Tr. 739].

The ALJ then discussed how the objective medical evidence and the opinion evidence from medical and nonmedical sources informed his determination of the RFC. [*Id.*, Tr. 426-27]. He found that the degree of limitation Byberg alleged was not supported by the normal imaging results or her engaging in pulling sheet rock and heavy lifting. [*Id.*]. He concluded that her allegations regarding mental impairments were not supported by

---

³ "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 F. App'x 433, 436 n.1 (6th Cir. 2012) (citations omitted).

11

her repeated GAF scores higher than 50, her failure to comply with recommended treatment, and her noted improvement due to medications. [*Id.*]. His thorough analysis of the record satisfies the requirements of SSR 96-8p and renders Byberg's argument unsustainable. Further, Byberg has the burden of demonstrating that she requires a more restrictive RFC, and she has failed to satisfy that burden. *Preslar*, 14 F.3d at 1110; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

### D.

Byberg argues that the ALJ did not properly assess her mental RFC under Social Security Rulings 96-8p and 85-5. In relevant part, SSR 96-8p provides that work-related mental activities generally include the abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 85-15 similarly instructs that a finding of disability is warranted when there is a "substantial loss of ability" to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting" on a sustained basis.

12

In analyzing Byberg's abilities in these areas, the ALJ found that she had moderate difficulties with social functioning and concentration, persistence or pace ("CPP"). [R. 7-8, Tr. 422]. Regarding social functioning, he found that her anxiety causes her to avoid frequent public interaction, though she does occasionally visit family or invite them over, and that she testified to leaving the house to grocery shop. [*Id.*, citing R. 7-7, Tr. 327-28]. He also mentioned her cooperation and calm mood during the psychological consultative examination. [*Id.*, citing R. 7-7, Tr. 304-06]. In regards to Byberg's CPP, the ALJ found that her anxiety would reasonably cause deficits in concentration, but that treatment records showed good memory and concentration. [*Id.*, citing R. 7-7, Tr. 306, 327-28, 337-38]. He noted that she testified to watching "a half-hour television show, which requires a certain degree of attention." [*Id.*].

The ALJ further discussed Dr. Baddigam's opinion that Byberg could understand, remember and follow through with directions when they are given to her, [*Id.*, Tr. 425, citing R. 7-7, Tr. 306], Dr. Jackson's opinion that she "retained the ability to understand, remember, and carry out simple instructions, [*Id.*, Tr. 426, citing R. 7-7, Tr. 358-60], and the opinion of Michelle Solo, LMSW, who found that Byberg "retained the ability to perform simple and short instructions" [*Id.*, Tr. 427, citing R. 7-7, Tr. 355-

13

56]. Taking this evidence into account, the ALJ assessed an RFC that restricted Byberg to "simple[,] routine, and repetitive tasks that require little judgment and can be learned in a short period; no interaction with the public, and occasional interaction with co-workers." [*Id.*, Tr. 423]. Byberg fails to demonstrate that the ALJ's discussion and RFC were in conflict with SSR 96-8p or SSR 85-15, or that any such purported error was harmful. She has also failed to sustain her burden of showing that she requires a more restrictive mental RFC. *Preslar*, 14 F.3d at 1110; *Jordan,* 548 F.3d at 423.

### E.

Lastly, Byberg contends that the ALJ failed to comply with Social Security policies regarding fibromyalgia, but the Court finds this argument impossible to parse. First, Byberg quotes an outdated 1990s Guidance on fibromyalgia that nevertheless correctly states that a fibromyalgia diagnosis requires "at least 11 . . . tender points." [R. 12, PgID 835]. *See* Social Security Ruling 12-2p. Byberg fails to explain the relevancy of her quote, especially considering that Dr. Kravitz found Byberg to have fewer than eight trigger points for fibromyalgia. [R. 7-8, Tr. 451]. Without elucidation, Byberg leaps to Social Security Ruling 99-2p and the "considerable overlap" between chronic fatigue syndrome ("CFS") and fibromyalgia. But

14

the record does not reflect a diagnosis or even mention of CFS. Under SSR 99-2p, "individuals with CFS who do not have the specified number of tender points to establish [fibromyalgia], will still be found to have a medically determinable impairment." But Byberg has not demonstrated that she has CFS and, furthermore, the ALJ found that she had the severe impairment of fibromyalgia, rendering Byberg's argument moot. [R. 7-8, Tr. 420].

The Commissioner notes that most cases of fibromyalgia are not totally disabling, (*Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (citations omitted)), and that the ALJ assessed a restrictive RFC of sedentary work with additional exertional limitations, partly due to Byberg's fibromyalgia symptoms. The ALJ did state that the evidence supporting Dr. Kovan's fibromyalgia diagnosis was "brief and vague," which the Commissioner admits lacks clarity. But Byberg does not demonstrate any prejudice caused by this error, and the ALJ's assessment of Byberg's fibromyalgia throughout the rest of the decision is clear. The ALJ's assessment of Byberg's fibromyalgia as a severe impairment that is nonetheless not disabling is supported by substantial objective and opinion evidence.

## III. CONCLUSION

The Court **RECOMMENDS** that the Commissioner's motion for summary judgment **[R. 15]** be **GRANTED**, that Byberg's motion for summary judgment **[R. 12]** be **DENIED**, and the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: December 30, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 30, 2016.

                                                       s/Marlena Williams
                                                       MARLENA WILLIAMS
                                                       Case Manager